# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 23-273** |
| **YAIDEL PLACIDO-SALVADOR** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendant Yaidel Placido-Salvador's Motion to Suppress (Doc. 136). For the following reasons the Motion is DENIED.

## BACKGROUND

Following a traffic stop in which kilogram quantities of cocaine were discovered in Defendant Yaidel Placido-Salvador's vehicle, he was charged by Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or more of Cocaine in violation of 21 U.S.C. § 841(a)(1) and Possession with Intent to Distribute Five Kilograms or more of Cocaine. In the instant Motion, he moves to suppress the evidence obtained in the traffic stop, alleging that it was (1) not justified from its inception and (2)

1

was unlawfully extended. Defendant requests an evidentiary hearing on his Motion. The Government opposes.

## LEGAL STANDARD

Evidentiary hearings on motions to suppress are not granted as a matter of course.[1] Rather, "an evidentiary hearing is required 'when the defendant alleges sufficient facts which, if proven, would justify relief.'"[2]

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands.'"[3] Nonetheless, Supreme Court precedent has "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."[4] "This rule—the exclusionary rule—is a 'prudential doctrine' . . . created by this Court 'to compel respect for the constitutional guaranty.'"[5] The purpose of the exclusionary rule is "to safeguard Fourth Amendment rights . . . through its deterrent effect."[6]

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was

---

[1] United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983).

[2] United States v. Mergist, 738 F.2d 645, 648 (5th Cir. 1984) (quoting *Harrelson*, 705 F.2d at 737).

[3] Herring v. United States, 555 U.S. 135, 139 (2009) (quoting Arizona v. Evans, 514 U.S. 1, 10 (1995)).

[4] *Id.*

[5] Davis v. United States, 554 U.S. 229, 236 (2011) (citations omitted).

[6] United States v. Calandra, 414 U.S. 338, 348 (1974).

obtained in violation of her constitutional rights."[7] When the Government performs a warrantless search or seizure, however, the burden shifts to the Government to prove by a preponderance of the evidence that the search or seizure was constitutional.[8]

## LAW AND ANALYSIS

"[A] seizure occurs when an officer objectively manifests an intent to restrain the liberty of an individual through either use of physical force or a show of authority."[9] "The stop of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment."[10] The legality of a traffic stop is analyzed under the framework set forth by the Supreme Court in *Terry v. Ohio*.[11] Under the two-part *Terry* reasonable suspicion inquiry, the court asks "whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the

---

[7] United States v. Guerrero–Barajas, 240 F.3d 428, 432 (5th Cir. 2001) (citing United States v. Roch, 5 F.3d 894, 897 (5th Cir. 1993)); *see also* United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977).

[8] United States v. McKinnon, 681 F.3d 203, 207 (5th Cir. 2012) (citing *Guerrero–Barajas*, 240 F.3d at 428).

[9] United States v. Wright, 57 F.4th 524, 530–31 (5th Cir. 2023).

[10] United States v. Raney, 633 F.3d 385, 389–90 (5th Cir. 2011) (citing United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en banc)).

[11] 392 U.S. 1 (1968); *see* United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005).

interference in the first place.'"[12] Defendant argues that the traffic stop at issue here was unconstitutional under either prong.

### A. Justified at its Inception

First, Defendant argues that the traffic stop was not justified at its inception. A seizure for Fourth Amendment purposes "must be justified by reasonable suspicion that criminal activity has taken or is currently taking place."[13] Courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."[14] Officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them."[15] "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure."[16]

Defendant argues that it is unknown whether the traffic stop was justified at its inception because there is no video evidence, such as a dash cam footage, of the alleged traffic infraction that precipitated the stop. The police report, however, asserts that the officer initiated a traffic stop of Plaintiff's vehicle because it briefly crossed the white fog line of Interstate 55.[17] Plaintiff has not presented any evidence contradicting this fact and has not identified any law requiring video evidence to prove a stop was justified. Accordingly, the

---

[12] Lopez-Moreno, 420 F.3d at 430.
[13] United States v. Garza, 727 F.3d 436, 440 (5th Cir. 2013).
[14] United States v. Arvizu, 534 U.S. 266, 273 (2002).
[15] *Id.*
[16] *Lopez-Moreno*, 420 F.3d at 430.
[17] Doc. 162-1.

Government has carried its burden to show that the stop was justified at its inception.

## B. Duration

As to the second prong, Defendant argues that the duration of the stop was unlawful. "An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime."[18] "[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."[19] An officer may run a computer check on a driver's license, insurance papers, and vehicle registration as part of his initial investigation.[20] Additionally, an officer may ask questions on subjects unrelated to the initial justification for the stop, such as the purpose and itinerary of the occupants' trip.[21] "If all computer checks come back clean, then as a general matter reasonable suspicion disappears, and there is no legitimate reason for extending the stop."[22] "A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled,

---

[18] United States v. Pack, 612 F.3d 341, 350 (5th Cir.), opinion modified on denial of reh'g, 622 F.3d 383 (5th Cir. 2010)

[19] *Brigham*, 382 F.3d at 507 (citations omitted).

[20] United States v. Banuelos-Romero, 597 F.3d 763, 766 (5th Cir. 2010).

[21] *Pack*, 612 F.3d at 350 (citations omitted).

[22] United States v. Jenson, 462 F.3d 399, 404 (5th Cir.2006) (citing *Lopez–Moreno*, 420 F.3d at 431).

then the detention may continue until the new reasonable suspicion has been dispelled or confirmed."[23]

Defendant contends that the officer unlawfully prolonged his detention to 45 to 50 minutes without reasonable suspicion to do so before he was ultimately arrested. Defendant is primarily a Spanish speaker and had difficulty communicating with the officer who stopped him, Trooper Aaron Couturie. Trooper Couturie attempted to use a translation app on his phone to communicate with Defendant, but poor reception in the area slowed their communications. Defendant complains that during the stop, Trooper Couturie engaged in a series of questions unrelated to the purpose of the stop, such as probing in to his "travel history, work attire, possession of multiple phones, and supposed inconsistencies in his responses," and that the questioning was unlawfully prolonged by the use of the unreliable and slow translation app. But the law is clear that an officer may ask questions on subjects unrelated to the initial justification for the stop, such as the purpose and itinerary of the occupants' trip.[24] Indeed, "the Fourth Amendment protects against detention, not questioning."[25] Defendant does not provide any support for his contention that the use of the translation app unconstitutionally prolonged the stop. In support of his argument, Defendant cites only to *United States v. Cruz-Zamora*, 318 F. Supp. 3d 1264, 1268 (D. Kan. 2018) and *United States v. Ramirez-Mendoza*, No. 4:20-CR-00107, 2021 WL 4502266, at *6 (M.D. Pa. Oct. 1, 2021), which discuss the unreliability of translation apps in obtaining consents to

---

[23] *Lopez–Moreno*, 420 F.3d at 431 (citations omitted).
[24] *Pack*, 612 F.3d at 350.
[25] *Id.*

search. Defendant has not provided any case or law suggesting that the delay created by use of a translation app to obtain answers to basic investigatory questions incident to a traffic stop is unlawful. Certainly, if the officer is permitted to ask limited questions, then waiting for answers to those questions must also be permitted.[26]

Further, the facts as detailed in the police report indicate that Trooper Couturie developed reasonable suspicion "in the course of the stop and before the initial purpose of the stop has been fulfilled."[27] Specifically, Trooper Couturie observed that (1) upon stopping his vehicle, Defendant immediately exited the car, which Trooper Couturie perceived as an effort to distance himself from the vehicle; (2) Defendant possessed two phones; (3) Defendant's answers regarding his travel plans and work were inconsistent (perhaps because of the language barrier, but perhaps not); (4) Defendant told Trooper Couturie that the car was his wife's, but a computer check revealed it was registered to an auto group in Houston; (5) Defendant seemed more interested in Trooper Couturie looking through the vehicle windows than locating the requested documentation; and (6) his clean attire and construction vest were inconsistent with his statement that he had been installing countertops all day. In addition, the officer was aware that Interstate 55 is a major corridor for drug-trafficking into the New Orleans area. Defendant has not presented any facts contradicting these, except to argue that they do not establish

---

[26] *See* United States v. Hernandez, No. SA-19-CR-00226-XR, 2021 WL 3516247, at *4 (W.D. Tex. Aug. 10, 2021), *aff'd sub nom*. United States v. Perez Hernandez, No. 23-50170, 2024 WL 4719618 (5th Cir. Nov. 8, 2024) (holding that five-minute delay for a trooper who spoke Spanish fluently to arrive did not unconstitutionally prolong the traffic stop).

[27] *Lopez–Moreno*, 420 F.3d at 431.

reasonable suspicion.[28] The Court disagrees. Trooper Couturie points to "specific and articulable facts which, taken together with rational inferences from those facts" raise reasonable suspicion to prolong the stop.[29] Accordingly, Defendant has not shown that the stop was unconstitutional or raised any facts that, if proven, would justify relief.

## CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

New Orleans, Louisiana this 14th day of July, 2025.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[28] Because there is no factual dispute, this Court need not hold an evidentiary hearing on the facts. Further, the facts as alleged by Defendant do not justify relief as explained herein. Accordingly, his request for an evidentiary hearing is denied.

[29] *Lopez-Moreno*, 420 F.3d at 430.